642 A.2d 978

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. JUAN DARNELL SMITH, DEFENDANT–RESPONDENT.

Argued March 1, 1994—Decided June 20, 1994.

*Julie Davidson,* Assistant Prosecutor, argued the cause for appellant (*Robert W. Gluck,* Middlesex County Prosecutor, attorney).

*Stephen W. Kirsch,* Assistant Deputy Public Defender, argued the cause for respondent (*Susan L. Reisner,* Acting Public Defender, attorney).

*Michael J. Williams,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey (*Deborah T. Poritz,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

CLIFFORD, J.

We granted certification, 134 *N.J.* 561, 636 *A.*2d 519 (1993), to review the Appellate Division's reversal of defendant's convictions for armed robbery, a violation of *N.J.S.A.* 2C:15–1, and possession of a weapon for an unlawful purpose, contrary to *N.J.S.A.* 2C:39–4d. In an unreported opinion the Appellate Division held that our decision in *State v. Talley*, 94 *N.J.* 385, 466 *A.*2d 78 (1983), "mandates a reversal because of the trial court's refusal to allow a jury to convict defendant for theft of services," a disorderly-persons offense under *N.J.S.A.* 2C:20–8 and *N.J.S.A.* 2C:20–2b(3). Because we are satisfied that *Talley* does not apply in the circumstances before us, we reverse and reinstate defendant's convictions.

I

On May 23, 1990, a taxi driver, Maroun J. Maroun, picked up defendant in New Brunswick and drove him to an Edison motel. Maroun claimed that defendant had attempted to pay the seven-dollar fare with a counterfeit one-hundred-dollar bill. The driver refused to accept the bill because he saw that defendant had a ten-dollar bill in his hand. In response, defendant drew a large knife and took the victim's money, amounting to about $120 in cash. Defendant fled, only to be arrested shortly thereafter with $124 in his pocket. The police failed to find a knife.

Defendant admitted that he had attempted to pay with a counterfeit bill, but claimed that he had merely left the cab without paying and that he had never had a knife. He further claimed that the cash in his pocket constituted what remained of his paycheck. Defendant produced two witnesses, one of whom testified that defendant had received his paycheck on the day of the theft and the other that she had taken defendant to a check-cashing establishment that day.

The trial court rejected defendant's request to instruct the jury on theft of services. It limited its instruction to the offenses contained in the indictment, namely, armed robbery and the

weapon-possession charge, and explained to the jury that if it believed defendant's version of the events and decided that defendant had committed theft of services only, it must find defendant not guilty of the charges brought against him. The jury returned a verdict of guilty on both counts. Merging the charge of possession into the robbery charge, the trial court sentenced defendant to twenty years imprisonment with a parole-ineligibility period of six years and eight months pursuant to the persistent-offender provision, *N.J.S.A.* 2C:44–3a. It denied defendant's post-trial motion for a mistrial based on the jury instructions.

Defendant based his appeal to the Appellate Division on the single contention that the trial court had improperly denied his request for a jury instruction on what defendant characterized as "the lesser-included offense" of theft of services. Because the Appellate Division concluded that the record contained "evidence of a single integrated act of theft," it reversed. Quoting from *State v. Sloane*, 111 *N.J.* 293, 299, 544 *A.*2d 826 (1988), the court declared that a trial court should give a jury an instruction that the facts support and the defendant requests, to protect against a jury convicting a defendant of a greater charge solely to ensure that the defendant not go free.

In seeking reversal of the Appellate Division judgment, the State poses as the sole issue whether *Talley, supra,* 94 *N.J.* 385, 466 *A.*2d 78, "require[s] consolidation of two unintegrated thefts, involving distinct properties, misappropriated by distinct methods with distinct victims."

II

–A–

Primarily, we address the issue of lesser-included charges. To be considered a lesser-included offense, a crime either must be established by proof of the same or less than all the facts used to establish the greater charge, *N.J.S.A.* 2C:1–8d(1), or it must differ from the crime charged only through a lower degree of risk of

injury to the victim or a lower degree of culpability of the defendant, *N.J.S.A.* 2C:1–8d(3).

■   Here the theft of services of the seven-dollar cab fare is not established by the same or less than all the facts required to prove the armed robbery of the cab driver.  The theft-of-services statute, *N.J.S.A.* 2C:20–8a, renders a person guilty of theft "if he purposely obtains services [that] he knows are available only for compensation, by deception or threat, or by false token, slug, or other means."  The same statute defines "services" as including "transportation," and further provides:

> Where compensation for service is ordinarily paid immediately upon the rendering of such service, as in the case of hotels and restaurants, absconding without payment or offer to pay gives rise to a presumption that the service was obtained by deception as to intention to pay.

Defendant's testimony at trial was that he did not rob Maroun, did not threaten him, did not have a knife, did not take any money from him, did not force Maroun to give him anything, and that he did nothing more than "cheat[ ] him out of the cab fare by not paying him."  The State's case, on the other hand, rested on proof that defendant had threatened Maroun with a knife and had robbed him of about $120.  The offense of theft of services—deceptively and purposely obtaining a cab ride without paying the fare—is not established by evidence that is the same as or less than that required to prove the wholly different "taking" involved in forcing the victim to turn over $120 at knifepoint.  The operative ingredient—deception in the one case, the threat of immediate bodily injury in the other—is sharply different for each offense. In this case, because the element of deception is an essential ingredient of obtaining services without payment but is not required for a robbery conviction, theft of services cannot be said to be a lesser-included offense of robbery.  *See Talley, supra,* 94 *N.J.* at 393, 466 *A.*2d 78 (declaring theft by deception not "included offense" of robbery under *N.J.S.A.* 2C:1–8d(1), because it contains element of fraudulent taking, not required for robbery conviction).

Nor does the "lower risk or lower degree of culpability" analysis required under *N.J.S.A.* 2C:1–8d(3) yield a different result. A threat of immediate bodily injury, with or without a knife, with its greater attendant culpability and risk of injury, establishes an offense that is different from theft of services not simply in degree but in kind. The first poses a risk of physical injury, but the second involves at most a financial loss. We conclude that under these facts, theft of services is not a lesser-included offense of robbery under *N.J.S.A.* 2C:1–8d(3).

–B–

■ Defendant contends that because theft of services is a "related lesser offense" of robbery, he was entitled, as the Appellate Division held, to an instruction on theft of services under *N.J.S.A.* 2C:20–2a, which consolidates acts of theft under Chapter 20 of the Code of Criminal Justice in a single offense. We hold that even in light of the "consolidation" statute, robbery charges do not include theft of services as a related lesser offense.

■ The Legislature has provided that

[c]onduct denominated theft in this chapter constitutes a single offense, but each episode or transaction may be the subject of a separate prosecution and conviction. A charge of theft may be supported by evidence that it was committed in any manner that would be theft under this chapter, notwithstanding the specification of a different manner in the indictment or accusation, subject only to the power of the court to ensure fair trial by granting a bill of particulars, discovery, a continuance, or other appropriate relief where the conduct of the defense would be prejudiced by lack of fair notice or by surprise.

[*N.J.S.A.* 2C:20–2a.]

The Legislature's purpose in enacting the "consolidation" provision was to forestall a defendant's attempt to defeat one theft charge through a procedural sleight-of-hand, namely, by arguing that defendant had committed a different theft offense, *i.e.*, that defendant had misappropriated property by some means other than the kind of theft contemplated by the indictment. *Talley, supra,* 94 *N.J.* at 391, 466 *A.*2d 78. We thus held in *Talley* that "[b]y virtue of the 'consolidation' provision * * *, a defendant charged with robbery is now on notice that *any* conduct denom-

inated as theft is within the four corners of a robbery indictment."
*Id.* at 393, 466 *A*.2d 78. We based our decision on the notion that
"the adversary system cannot be permitted to deteriorate into a
mere game in which defendant brazenly manifests his contempt
for the system by openly admitting his guilt of an offense and then
seeking exoneration on the basis of some arcane notion of plead-
ing." *Id.* at 394, 466 *A*.2d 78.

This appeal presents a related issue. Defendant seeks not
exoneration but a conviction for a lesser offense, entitling him, he
says, to an instruction on a disorderly-persons offense in addition
to that on the first-degree crime charged. We reject his interpre-
tation of *N.J.S.A.* 2C:20–2a and of related lesser offenses. Statu-
tory consolidation covers all thefts that are "linked together by the
concept of the 'involuntary transfer of property.'" *Talley, supra*,
94 *N.J.* at 394, 466 *A*.2d 78. That is, statutory consolidation
reaches all different methods for the involuntary transfer of the
same property. In the instant case, however, we are concerned
with two separate harms, not two versions of the means through
which defendant brought about the same harm—the involuntary
transfer of a single form of property. The State charged that
defendant stole the victim's money at knifepoint. Defendant
claims that he stole only the service of the taxi ride. The fact that
defendant argues a different means of involuntary transfer does
not permit consolidation of the harm he admits with the harm that
the State charges.

We also note that the issue of related lesser offenses does
not raise the "difficult constitutional questions," *Keeble v. United
States*, 412 *U.S.* 205, 208, 93 *S.Ct.* 1993, 1995, 36 *L.Ed.*2d 844, 847
(1973); *accord State v. Muniz*, 228 *N.J.Super.* 492, 505, 550 *A*.2d
487 (App.Div.1988), *certif. denied*, 127 *N.J.* 321, 604 *A*.2d 597
(1990), implied by a defendant's right to have a jury consider
instructions on lesser-included offenses rationally supported by
the evidence. The danger of a compromise verdict of guilt on the
greater charge when the trial court refuses to instruct the jury on
a lesser-included offense indicated by the proofs and requested by

the defendant, see *Sloane, supra,* 111 *N.J.* at 299, 544 *A.*2d 826, is not posed by refusal to charge the jury on lesser offenses that are not included in the offense on which the defendant has been indicted. We hold, therefore, that even considering the statutory "consolidation" provision, theft of services is not within the four corners of a robbery indictment when the theft underlying the robbery was the wrongful taking of the victim's money.

Finally, we are persuaded by the State's contention that the exercise of prosecutorial charging discretion includes the authority to decline to prosecute defendant for an offense that defendant admits having committed, if that admission is inconsistent or incongruent with the theory of the State's case. In prosecuting defendant for armed robbery and possession of a weapon for an unlawful purpose, the State was prepared to have the jury acquit defendant if it believed he had committed only the offense of theft of services. A defendant should not be allowed to alter the State's trial strategy by admitting the commission of an unrelated, less serious offense, and then having the court charge the jury, over the State's objection, that it can return a verdict on that offense.

### III

Judgment reversed. Defendant's convictions are reinstated.

O'HERN, J., dissenting.

This is hardly a sympathetic case. Defendant admits that he beat a taxi driver out of a fare. The State has charged him, however, with robbery, which is a theft accompanied by violence. *N.J.S.A.* 2C:15–1, the statute governing robbery, does not use the expression "armed robbery." That statute grades robbery as a first-degree crime "if in the course of committing the theft the actor * * * is armed with, or uses or threatens the immediate use of a deadly weapon." The State says that defendant stole $120 by brandishing a knife at the taxi driver. Defendant says that he stole the seven-dollar ride only, without a knife. That is the crime

that he admits committing. However, the State says: "We're sorry, we are going to let the jury consider only our version of the event. The jury will have to believe us or let a criminal go free."

The trial court agreed with the State and refused to permit the jury to consider the theft of services because, in its view, the grand jury had not indicted defendant for that offense. According to the trial court, the armed-robbery count was predicated only on the theft of the $120, not on defendant's refusal to pay the cab fare. But "an indictment is merely a pleading device and never an end in itself." *State v. LeFurge*, 101 *N.J.* 404, 419, 502 *A.*2d 35 (1986). The indictment, moreover, charges the defendant with armed robbery, that is, that on May 23, 1990, defendant "in the course of committing a theft, did threaten immediate bodily injury to [the taxi driver] and/or purposely put [the taxi driver] in fear of immediate bodily injury, while armed with and/or threatening the immediate use of [a] deadly weapon."

The trial court nonetheless refused to permit the jury to consider the offense of theft of services, which was plainly in the case by virtue of defendant's testimony. In other circumstances, we have regularly held that a jury must be presented with all available verdicts that have support in the evidence, subject to a fair-notice requirement applicable to either the defendant or the State. For example, in *State v. Mancine*, 124 *N.J.* 232, 590 *A.*2d 1107 (1991), we held that a defendant indicted as the perpetrator of a murder, who testified at trial that someone else had committed the murder, could be found guilty of aggravated manslaughter as an accomplice to that murder on the theory that he may have hired the other person to injure the victim but did not intend that the victim be killed. In his concurring opinion, Justice Stein succinctly stated the principles that apply in such cases. He wrote:

> In my view, the lesser-included offense provision of the Code of Criminal Justice, *N.J.S.A.* 2C:1–8d, permits a defendant to be convicted of "an offense included in an offense charged," meaning that the statutory definition of an "included offense" refers back to the offense for which defendant was indicted, in this case murder. *See State v. LeFurge*, 101 *N.J.* 404, 419, 502 *A.*2d 35 [,43] (1986). Hence, as the majority opinion tacitly acknowledges, the aggravated-manslaughter offense in this case was not a lesser-included offense of murder, the indicted offense, because its

factual predicate was entirely different. The evidence supporting the aggravated-manslaughter charge indicated that defendant hired someone to injure the decedent, and the murder indictment charged that defendant committed the homicide by his own conduct.

Nevertheless, there was clearly a rational basis in the evidence for the aggravated-manslaughter charge, and defendant, understandably, did not object to the trial court's proposed charge on aggravated manslaughter. As we noted in *State v. Sloane,* 111 *N.J.* 293, 300, 544 *A.2d* 826 [,829] (1988), the statutory definition of lesser-included offenses is not "all-encompassing," nor are the statutory categories "water-tight compartments." *Sloane* suggests that in certain circumstances, subject to the requirements of fair notice, an offense not meeting the Code's definition of lesser-included offense should be charged to the jury if it is supported by the evidence. That principle "comports with our general view that subject to fair notice the jury should resolve the degree of an actor's guilt on the basis of the evidence presented to the jury." *Ibid.*

[*Id.,* 124 *N.J.* at 264–65, 590 *A.2d* 1107 (Stein, J., concurring).]

He observed that the principles stated in *LeFurge, supra,* that a defendant may be found guilty of an uncharged lesser offense included in the offense charged, 101 *N.J.* at 419, 544 *A.2d* 826, would equally accommodate a charge on a related offense. 124 *N.J.* at 265, 590 *A.2d* 1107.

In *State v. Grunow,* 102 *N.J.* 133, 506 *A.2d* 708 (1986), we held that although the defendant could not be charged with murder (he had previously been acquitted of that offense by a jury), on retrial a jury must nevertheless consider the available verdict of passion/provocation manslaughter, a lesser-included offense of an uncharged offense. In short, as our cases have repeatedly explained, the lesser-included-offense doctrine is not an abstract doctrine of watertight compartments. Rather, it is an essential component of a fair trial. Defendant is entitled to have a jury consider his guilt of any offense shown by the evidence that is related to the offense charged.

In *State v. Short,* 131 *N.J.* 47, 618 *A.2d* 316 (1993), the Court reversed a murder conviction because the trial court had instructed the jury that any verdict of guilt that it returned on the implicated manslaughter charges would not result in the entering of a conviction against the defendant. The Court wrote: "Unless a jury is told that it can convict the defendant of lesser-included offenses, it may be tempted to find defendant guilty of a crime he

or she did not commit simply because it prefers to convict on *some* crime rather than no crime at all." *Id.* at 54, 618 *A.*2d 316.

In essence, the trial court told this jury the same thing, *i.e.*, that any finding of guilt on the theft-of-services charge would not result in the entering of a conviction against the defendant. The State, however, insists that it did not have to charge the theft of services; it chose to prosecute only the theft of the $120 in cash. That is almost the same argument that the State made in *State v. Purnell,* 126 *N.J.* 518, 601 *A.*2d 175 (1992), in which it chose not to prosecute a felony-murder homicide. Although felony-murder homicide is not a lesser-included offense of murder (it requires the proof of an additional element), we held that the State could not deprive the defendant of the right to have a jury consider defendant's guilt of an uncharged offense that would subject him to a lesser penalty. *Id.* at 534, 601 *A.*2d 175. Granted that the stakes were higher there and the facts a bit different in that the State sought to establish a robbery in the penalty phase, *id.* at 529, 601 *A.*2d 175, the principles remain the same.

To insist on those fair-trial rights in view of the small sums of money involved here may be tedious, but the central principle of justice is to "[t]reat like cases alike." H.L.A. Hart, *The Concept of Law* 155 (1961). No matter how small or inconsequential a case may appear in the larger scale, to the defendant involved it is the most important case in the judicial system. In all other cases, we have afforded defendants the right to have juries consider all available verdicts bearing on their guilt or innocence. Theft of services was an available verdict in this case. It was not an unrelated offense. I agree that a defendant charged with rape, who happened to have a counterfeit bill in his possession or possessed marijuana illegally on the occasion, does not have the right to have a jury charged on those offenses, but that is an entirely different scenario. That defendant need not mention either offense in defending a rape charge because they are wholly unrelated and irrelevant. This defendant, who is sworn to tell the truth as are the State's witnesses, cannot defend against the theft

without explaining to the jury what theft did occur. The indictment charged defendant with threatening the taxi driver "in the course of committing a theft." To deny the jury the opportunity to resolve defendant's guilt on the basis of the evidence presented to it subjects defendant to the substantial risk that the jury, knowing he committed some lesser wrongdoing, will convict him of a greater offense rather than acquit him entirely, the very evil to be avoided in these cases. *Keeble v. United States*, 412 *U.S.* 205, 212–13, 93 *S.Ct.* 1993, 1997–98, 36 *L.Ed.*2d 844, 850 (1973).

I would affirm the judgment of the Appellate Division.

*For reversal and reinstatement* —Justices CLIFFORD, POLLOCK, GARIBALDI and STEIN—4.

*For affirmance* —Justice O'HERN—1.